# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 24-253 |
| v. | : | DATE FILED: February 5, 2025 |
| JAHLIL WILLIAMS | : | VIOLATIONS: |
|    a/k/a "Bill" | | 18 U.S.C. § 1962(d) (conspiracy to |
|    a/k/a "25th Street Bill" | : | participate in the affairs of a |
|    a/k/a "Kill Bill" | | racketeering enterprise - 1 count) |
| RAKIEM SAVAGE | : | 18 U.S.C. § 1959(a)(1) (murder in aid |
|    a/k/a "Roc" | | of racketeering - 2 counts) |
|    a/k/a "Fat Roc" | : | 18 U.S.C. § 1959(a)(3) (assault with a |
|    a/k/a "roc30st__" | | dangerous weapon in aid of |
| KYAIR GARNETT | : | racketeering - 2 counts) |
|    a/k/a "Ky Jefe" | | 18 U.S.C. § 1959(a)(5) (conspiracy to |
|    a/k/a "Jefe" | : | commit murder in aid of racketeering |
| HANEEF ROBERSON | | - 2 counts) |
|    a/k/a "Haneef Robinson-Tucker" | : | 18 U.S.C. § 371 (conspiracy to commit |
|    a/k/a "Neef" | | counterfeiting - 1 count) |
|    a/k/a "BlackNeef" | : | 18 U.S.C. § 1349 (conspiracy to |
|    a/k/a "BlackNeef25st" | | commit mail and wire fraud - 1 count) |
| BIHEIS MOORE | : | 18 U.S.C. § 2 (aiding and abetting) |
|    a/k/a "Heis" | | |
|    a/k/a "Klay" | : | |
|    a/k/a "klay_30st" | | |
|    a/k/a "heis.30st" | : | |
| RAKIEM KING | | |
|    a/k/a "Cat" | : | |
|    a/k/a "Hellcat" | | |
|    a/k/a "hellcat30st" | : | |
| WARD ROBERTS | | |
|    a/k/a "Rob" | : | |
|    a/k/a "YoungWard25" | | |
| HARRY DRAPER | : | |
|    a/k/a "Coach" | | |
|    a/k/a "Unk" | : | |
| RAHMEIR HAYES | | |
|    a/k/a "SPARX" | : | |

## SUPERSEDING INDICTMENT

## COUNT ONE

## CONSPIRACY TO PARTICIPATE IN A RACKETEERING (RICO) ENTERPRISE
## 18 U.S.C. § 1962(d)

### THE GRAND JURY CHARGES THAT:

### THE RACKETEERING ENTERPRISE

At all times material to this indictment:

1.     The defendants and others were members of a local criminal organization, known as "Omerta," based in the Strawberry Mansion neighborhood of North Philadelphia, specifically in and around the area between 25th and 30th Streets in that neighborhood. Omerta planned and committed criminal activity, including murders, murder for hire, attempted murders, shootings, firearm possession, counterfeiting, money laundering, illegal gambling, obstruction of justice, robbery, and drug trafficking, as well as mail and wire fraud related to COVID-19 relief payments. Omerta existed to enrich its members through murder for hire, gambling, counterfeiting, fraud, robbery, and drug trafficking. Omerta also existed as a means for its members to establish a territory between 25th and 30th Streets in the Strawberry Mansion neighborhood. This territory existed to help Omerta protect its members, its enterprise activities, and to help Omerta members promote their identity and image associated with their territory. Omerta members used social media to promote Omerta's identity and image; to conduct gang meetings; and to organize, plan, and coordinate acts of violence, retaliation, and other criminal activity. Omerta also used music and music videos to enrich themselves; to promote their

2

identity and image; to recruit new members; to promote their violent acts; and to insult rival gangs and gang members.

2. Omerta was closely aligned with another North Philadelphia gang named "Zoo Gang." Some of the Omerta members were also Zoo Gang members or associates. As Zoo Gang was a larger group and covered a larger geographic area, Zoo Gang served as an important connection to the Omerta enterprise with respect to Omerta's purposes to enrich its members and protect its territory and members. At least one Zoo Gang member exerted a leadership role in Omerta due in part to his membership and leadership in Zoo Gang. Omerta also had connections with other gangs in Philadelphia. Omerta used at least one of these other gangs, the "Big Naddy Gang," or "BNG," to select individuals to commit acts of violence, including murder, attempted murder, and robbery. Omerta used the prospect of financial gain, increased social media exposure, and connections to the music industry to recruit affiliated gang members to commit these acts of violence and to entice them to either align with or join Omerta.

3. Omerta, including its leadership, members, and associates, constituted an enterprise, as that term is defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact. The enterprise constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

4. This enterprise was engaged in, and its activities affected, interstate commerce. The enterprise functioned as follows:

a. Omerta leadership, members, and associates obtained and possessed counterfeit United States currency, then passed, and attempted to pass, that counterfeit

United States currency at various retail stores in the Philadelphia area and elsewhere, including but not limited to other locations in Pennsylvania, New Jersey, Delaware, Maryland, and Georgia.

b.      Omerta leadership, members, and associates resorted to violence, threats of violence, and the display of firearms to rob retail stores, which had goods, products, and customers from various states, when Omerta's attempts to pass counterfeit United States currency were challenged or resisted.

c.      Omerta leadership, members, and associates coordinated the filing of fraudulent applications for, and the unlawful receipt of, Pandemic Unemployment Assistance ("PUA") funds.

d.      Omerta recruited members and demanded loyalty from its members and submission to Omerta, and to Omerta's leadership, as a condition of membership. Omerta members were expected to commit criminal activities. Those committing violent acts were deemed the most valuable.

e.      Omerta was an organization dedicated to committing violent crimes, including murder, robbery, attempted murder, obstruction, money laundering, gambling and drug trafficking crimes, as well as fraud, including counterfeiting, mail fraud, and wire fraud.

f.      Omerta leadership, members, and associates used interstate communications through cell phones and internet communications on social media, such as Instagram, in order to conduct the criminal activities of the enterprise.

4

      g.      Omerta leadership, members, and associates stole vehicles and used stolen vehicles to commit criminal acts.

      h.      Omerta leadership, members, and associates acquired, transferred, and possessed firearms and ammunition.

      i.      Omerta leadership, members, and associates possessed with the intent to distribute quantities of marijuana, a Schedule I controlled substance, and manufactured, possessed with the intent to distribute, and distributed Promethazine, a Schedule V controlled substance. Omerta also possessed, used, and displayed the possession and use of other controlled substances.

## PURPOSES OF THE ENTERPRISE

5.      The purposes of the enterprise, including its members and associates, included, but were not limited to, the following:

      a.      It was a purpose of the enterprise that its members and associates would obtain money and property, enrich its members, and generate revenue for the enterprise by committing criminal acts, including murder for hire, counterfeiting, robbery, mail and wire fraud, and drug trafficking, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere.

      b.      It was a further purpose of the enterprise that its members and associates would maintain, preserve, protect, and attempt to expand the power, territory, and profits of the enterprise through the use of threats, intimidation, violence, and murder.

      c.      It was a further purpose of the enterprise that it would acquire and distribute firearms and ammunition for members and associates of the group.

d.    It was a further purpose of the enterprise to retaliate against rival gang members for harming Omerta members or associates.

e.    It was a further purpose of the enterprise to prevent its members and associates from cooperating with law enforcement.

f.    It was a further purpose of the enterprise to raise money to hire lawyers and secure bail for members and associates who were arrested and charged with criminal offenses.

g.    It was a further purpose of the enterprise to obstruct justice by hindering the apprehension of members and associates who were sought by law enforcement.

h.    It was a further purpose of the enterprise to ensure continued operation of the enterprise by communicating with incarcerated members through jail calls (including video calls), social media, and contraband communication devices.

i.    It was a further purpose of the enterprise to promote its image and reputation through social media, music, and music videos.

j.    It was a further purpose of the enterprise to use social media, music, music videos, the promise of entry into the enterprise, and pecuniary gain to create and maintain connections with other gangs, recruit new members to the enterprise, and entice individuals to work for the enterprise, in part, by committing criminal acts.

k.    It was a further purpose of the enterprise to run illegal gambling businesses in order to enrich members and associates.

## MANNER AND MEANS OF THE ENTERPRISE

6.     The manner and means used by the enterprise to further its goals and achieve its purposes included the following:

a.     Omerta members and associates obtained and possessed counterfeit United States currency, then passed, and attempted to pass, that counterfeit United States currency at retail stores in the Philadelphia area and elsewhere, including but not limited to other locations in Pennsylvania, New Jersey, Delaware, Maryland, and Georgia. Members also exchanged, and attempted to exchange, counterfeit United States currency for genuine United States currency at those same retail stores.

b.     Omerta members and associates threatened violence, displayed firearms, and committed robberies when retail store personnel refused to accept or exchange the counterfeit United States currency.

c.     Omerta members and associates acquired and distributed firearms and ammunition to members and associates of the enterprise.

d.     Omerta members and associates coordinated the filing of fraudulent applications for Pennsylvania PUA funds. Members and associates used social media to coordinate the scheme, including sharing addresses and passwords to accomplish the scheme. Omerta members and associates then filed electronic PUA applications using interstate wires. As part of these fraudulent applications, Omerta members and associates supplied addresses in the Eastern District of Pennsylvania where PUA benefits were to be mailed. A bank then mailed the PUA benefits on debit cards from either Illinois or Minnesota to the Eastern District of Pennsylvania.

      e.      To protect the reputation and image of Omerta, members and associates murdered individuals who had "disrespected" Omerta members or had wounded or killed Omerta members.

      f.      To enrich the enterprise and to protect and expand Omerta's territory, scope of criminal operations, and revenues, Omerta members and associates committed murder for hire.

      g.      Omerta members and associates threatened, intimidated, robbed, and shot rival gang members and others who were in Omerta's territory.

      h.      Omerta members and associates used social media to identify their organization and its members. They accomplished this by using social media display names or "handles" which included the word "Omerta" and/or references to 25th and 30th Streets.

      i.      Omerta members and associates used social media to post group gang photos; taunt and intimidate rivals; encourage members, associates, and others not to cooperate with law enforcement; promote and glorify the violent acts of its members; and honor deceased Omerta members and associates.

      j.      Omerta members and associates used social media to organize, plan, coordinate, and commit their criminal activity.

      k.      Omerta members and associates made and wore clothing with logos including the word "Omerta."

      l.      Omerta members and associates organized and ran illegal gambling businesses on street corners in their territory.

m.      Omerta members and associates used stolen or rented vehicles to commit criminal acts and to conceal their roles in the crimes.

n.      Omerta members and associates used social media, music, and music videos to enrich themselves, promote alliances with other gangs and gang members, and to recruit new members.

o.      Omerta members and associates used gambling, travel, and the purchase of luxury goods and other items in order to conceal the source of the enterprise's illegally obtained funds.

## THE DEFENDANTS AND THEIR ROLES IN THE ENTERPRISE

19.     The defendants' roles in the enterprise are as follows:

a.      Defendant JAHLIL WILLIAMS, a/k/a "Bill," a/k/a "25th Street Bill," a/k/a "Kill Bill," was a leader of Omerta. He participated in murders, murders for hire, assaults with dangerous weapons, acquiring and possessing firearms, robberies, and acts of counterfeiting, mail fraud, and wire fraud. He ordered murders of people he deemed to be disrespectful to Omerta and people he believed had a "bounty" on them to be killed. Defendant WILLIAMS controlled the counterfeiting activities for Omerta. Defendant WILLIAMS also helped to direct protection for the group and retaliation against rival gang members or individuals who had, or whom he believed had, wounded or killed Omerta members. In addition, defendant WILLIAMS maintained and promoted ties with allied gang members or associates who could be helpful to Omerta. Defendant WILLIAMS planned criminal activity and hired or convinced other individuals to participate. Defendant WILLIAMS also determined who was a member or associate of Omerta and who was deemed to be a valuable member. Moreover,

defendant WILLIAMS frequently used social media, music, and music videos to promote himself, Omerta, and its members.

        b.     Defendant RAKIEM SAVAGE, a/k/a "Roc," a/k/a "Fat Roc," a/k/a "roc30st_," was another leader of Omerta. Defendant SAVAGE maintained close ties with defendant JAHLIL WILLIAMS. Defendant SAVAGE helped Omerta plan violent acts and provided firearms and other means, such as rental cars, to accomplish these violent acts. Defendant SAVAGE was important to Omerta because of his ties to other criminal organizations, such as Zoo Gang, in Philadelphia and elsewhere. In addition, defendant SAVAGE helped to secure and maintain locations for Omerta activities. Defendant SAVAGE also obtained quantities of marijuana, a Schedule I controlled substance, and Promethazine, a Schedule V controlled substance, for Omerta. Further, defendant SAVAGE participated in fraud offenses, running illegal gambling businesses money laundering, and COVID fraud, to financially assist Omerta in its goals. After defendant JAHLIL WILLIAMS was arrested and incarcerated on state charges, defendant SAVAGE helped ensure the continuity of Omerta operations. Defendant SAVAGE accomplished this continuity by providing financial support for incarcerated Omerta members and associates and continuing to communicate with them, helping to smuggle contraband into prisons for the benefit of incarcerated Omerta members and associates, and directing the remaining non-incarcerated Omerta members and associates.

        c.     Defendant KYAIR GARNETT, a/k/a "Ky Jefe," a/k/a "Jefe," was an enforcer and assassin for Omerta. He participated in murders, attempted robberies, assaults with dangerous weapons, acquiring and possessing firearms, counterfeiting, mail fraud, and wire

fraud. Defendant GARNETT was considered one of the top members of Omerta due to his violent acts.

d. Defendant HANEEF ROBERSON, a/k/a "Haneef Robinson-Tucker," a/k/a "Neef," a/k/a "BlackNeef," a/k/a "BlackNeef25st," was an enforcer for Omerta. He participated in murders, robberies, assaults with dangerous weapons, acquiring and possessing firearms, counterfeiting, mail fraud, and wire fraud.

e. Defendant BIHEIS MOORE, a/k/a "Heis," a/k/a "Klay," a/k/a "klay_30st," a/k/a "heis.30st," was an enforcer and assassin for Omerta. He participated in assaults with dangerous weapons, attempted robberies, counterfeiting, mail fraud, and wire fraud. Defendant MOORE was considered one of the top members of Omerta due to his violent acts.

f. Defendant RAKIEM KING, a/k/a "Cat," a/k/a "Hellcat," a/k/a "hellcat30st," was an enforcer Omerta. He participated in assaults with dangerous weapons, attempted robberies, and acts of counterfeiting, mail fraud, and wire fraud.

g. Defendant WARD ROBERTS, a/k/a "Rob," a/k/a "YoungWard25," was the Omerta member who primarily participated in passing counterfeit United States currency. He also participated in the PUA scheme.

h. Defendant HARRY DRAPER, a/k/a "Coach," a/k/a "Unk," was a counterfeiter for Omerta. He provided Omerta with counterfeit United States currency to fund the group's activities.

## THE RACKETEERING CONSPIRACY

20.    From at least August 2018 to in or about August 2023, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendants

**JAHLIL WILLIAMS,
RAKIEM SAVAGE,
KYAIR GARNETT,
HANEEF ROBERSON,
BIHEIS MOORE,
RAKIEM KING,
WARD ROBERTS,
and
HARRY DRAPER,**

being persons employed by and associated with an enterprise known as the "Omerta Gang" ("Omerta"), as more fully described in paragraphs 2 through 19 of this count, which enterprise was engaged in, and the activities of which affected, interstate commerce, conspired and agreed, with each other, and with others known and unknown to the grand jury, to violate Title 18, United States Code, Section 1962(c), that is, to knowingly and unlawfully conduct and participate, directly and indirectly, in the conduct of the affairs of such enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5), which consisted of multiple:

a.    Acts involving murder, which is chargeable under Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 2502, 306, and 903, of the laws of the Commonwealth of Pennsylvania, which are punishable by imprisonment for more than one year,

b.    Acts indictable under Title 18, United States Code, Section 1958 (relating to use of interstate commerce facilities in the commission of murder-for-hire);

12

           c.       Acts involving robbery, conspiracy to commit robbery, and aiding and abetting robbery, which are chargeable under Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 3701, 306, and 903, of the laws of the Commonwealth of Pennsylvania, which is punishable by imprisonment for more than one year;

           d.       Acts indictable under Title 18, United States Code, Section 1951 (relating to interference with interstate commerce, robbery, or extortion);

           e.       Acts indictable under Title 18, United States Code, Sections 471, 472, and 473 (relating to counterfeiting);

           f.       Acts indictable under Title 18, United States Code, Sections 1341 and 1343 (relating to mail fraud and wire fraud); and

           g.       Acts indictable under Title 18, United States Code, Sections 1956 and 1957 (relating to the laundering of monetary instruments and engaging in monetary transactions in property derived from specified unlawful activity);

           h.       Acts indictable under Title 18, United States Code, Sections 1510 and 1511 (relating to obstruction of criminal investigations and obstruction of State or local law enforcement);

           i.       Acts indictable under Title 18, United States Code, Section 1955 (relating to the prohibition of illegal gambling businesses);

           j.       Offenses involving the buying, receiving, concealment, selling, and otherwise dealing in controlled substances; namely, conspiracy to distribute and to possess with intent to distribute a mixture and substance containing a detectable amount of marijuana, a

Schedule I controlled substance, and Promethazine, a Schedule V controlled substance, punishable under Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D), and 846.

## THE AGREEMENT

21.     It was a part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the enterprise's affairs.

## OVERT ACTS

22.     In furtherance of the conspiracy, and to affect the objects and purposes thereof, the defendants, and other co-conspirators not named as defendants, committed and caused to be committed various overt acts, including but not limited to the following:

(1)     On or about August 2, 2018, co-conspirators Germaine Lewis and Justice Harris, both charged elsewhere, possessed and passed counterfeit United States currency at the Rann Pharmacy, at 377 Main Street, Lower Salford, Pennsylvania.

(2)     On or about August 2, 2018, co-conspirator Germaine Lewis possessed and passed counterfeit United States currency at the Wawa store, at 371 Main Street, Lower Salford, Pennsylvania.

(3)     On or about August 10, 2019, defendants JAHLIL WILLIAMS and KYAIR GARNETT, and co-conspirator Tahir Rivers, charged elsewhere, possessed and passed counterfeit United States currency at Modell's and Uniqlo, retail stores on the 1600 block of Walnut Street in Philadelphia, Pennsylvania.

14

(4)     On or about September 27, 2019, defendant JAHLIL WILLIAMS possessed and passed counterfeit United States currency at the Five Below store, at 147 East Swedesford Road, Wayne, Pennsylvania.

(5)     On or about December 20, 2019, defendant BIHEIS MOORE possessed counterfeit United States currency in Philadelphia, Pennsylvania.

(6)     On or about January 2, 2020, defendants JAHLIL WILLIAMS and RAKIEM SAVAGE, in a group chat on Instagram, expressed their dismay over Omerta members being more concerned with making money through counterfeiting than avenging the murder of co-conspirator Isiah Culpepper and the wounding of defendant BIHEIS MOORE.

(7)     On or about January 2, 2020, defendant RAKIEM SAVAGE discussed Omerta's firearms in a group chat. Defendant SAVAGE informed defendant BIHEIS MOORE, "Heis kellz just took that P89 you claim was yours and gave it to BR."[1]

(8)     On or about January 4, 2020, defendants BIHEIS MOORE and RAKIEM KING possessed and passed counterfeit United States currency at the Giant Food Store, at 176 W. Street Road, Lower Southampton, Pennsylvania.

(9)     On or about January 16, 2020, defendant JAHLIL WILLIAMS and co-conspirators possessed and passed counterfeit United States currency at the Ulta Beauty store, at 40 Town Center Drive, Collegeville, Pennsylvania.

---

[1] All of the text messages, social media messages, and other materials quoted in this Indictment bear the same spelling, punctuation, and grammar as found in the originals of these records. Unless specifically indicated, all conversations and statements described in this Indictment are related in substance and in part.

(10)    On or about January 22, 2020, defendant WARD ROBERTS possessed and passed counterfeit United States currency at the Giant Food Store, at 7150 Hamilton Boulevard, Lower Macungie, Pennsylvania.

(11)    On or about January 27, 2020, defendant WARD ROBERTS possessed and passed counterfeit United States currency at the ShopRite store, at 4701 Freemansburg Avenue, Easton, Pennsylvania.

(12)    On or about February 12, 2020, defendant WARD ROBERTS possessed and passed counterfeit United States currency at the AutoZone store, at 2726 Front Street, Philadelphia, Pennsylvania.

(13)    On or about February 29, 2020, defendant RAKIEM SAVAGE and co-conspirator Germaine Lewis, using Instagram, discussed the transfer of firearms. Lewis asked defendant SAVAGE, "yo can I hold ya dog dwn," to which defendant SAVAGE responded, "I need it bro I be standing on my block." Lewis then stated, "I need uh dog bad," to which SAVAGE responded, "Zah still ain't give me bill's jawn yet."

(14)    On or about April 30, 2020, defendants KYAIR GARNETT, RAKIEM KING, and WARD ROBERTS possessed and passed counterfeit United States currency at the TruValue Hardware Store and the Acme supermarket, both at Crossroads Plaza, at 800 Bustleton Park, A10, in Northampton Township, Pennsylvania.

(15)    On or about May 17, 2020, defendants KYAIR GARNETT and WARD ROBERTS possessed and attempted to pass counterfeit United States currency at the CVS store, at 2363 Oregon Pike, Manheim Township, Pennsylvania.

16

(16)    On or about May 20, 2020, defendant RAKIEM KING, under penalty of perjury, electronically filed a fraudulent application for Pennsylvania PUA benefits. The application falsely stated that KING was unemployed due to the COVID-19 pandemic and was seeking employment.

(17)    On or about May 22, 2020, defendant RAKIEM SAVAGE, under penalty of perjury, electronically filed a fraudulent application for Pennsylvania PUA benefits. The application falsely stated that defendant SAVAGE was unemployed due to the COVID-19 pandemic and was seeking employment.

(18)    On or about May 25, 2020, a co-conspirator sent a message in an Instagram chat group including defendant JAHLIL WILLIAMS and co-conspirators Germaine Lewis, Justice Harris, and Tahir Rivers, all charged elsewhere, asking, "what's that unemployment link." Members of the group chat respond with information on how to locate the specific PUA application and where to file specific PUA applications.

(19)    On or about May 29, 2020, defendant KYAIR GARNETT, under penalty of perjury, electronically filed a fraudulent application for Pennsylvania PUA benefits. The application falsely stated that defendant GARNETT was unemployed due to the COVID-19 pandemic and was seeking employment.

(20)    On or about June 12, 2020, defendant BIHEIS MOORE, under penalty of perjury, electronically filed a fraudulent application for Pennsylvania PUA benefits. The application falsely stated that defendant MOORE was unemployed due to the COVID-19 pandemic and was seeking employment.

(21)     On or about June 20, 2020, defendant WARD ROBERTS, under penalty of perjury, electronically filed a fraudulent application for Pennsylvania PUA benefits. The application falsely stated that defendant ROBERTS was unemployed due to the COVID-19 pandemic and was seeking employment.

(22)     On or about June 22, 2020, defendant HANEEF ROBERSON, under penalty of perjury, electronically filed a fraudulent application for Pennsylvania PUA benefits. The application falsely stated that defendant ROBERSON was unemployed due to the COVID-19 pandemic and was seeking employment.

(23)     On or about June 22, 2020, defendant JAHLIL WILLIAMS, under penalty of perjury, electronically filed a fraudulent application for Pennsylvania PUA benefits. The application falsely stated that defendant WILLIAMS was unemployed due to the COVID-19 pandemic and was seeking employment.

(24)     On or about June 26, 2020, defendant BIHEIS MOORE shot and wounded S.S., who was driving on the 2900 block of W. Huntingdon Street, in Philadelphia.

(25)     On or about June 26, 2020, defendants BIHEIS MOORE and RAKIEM KING fled from the shooting scene of S.S. on the 2900 block of W. Huntingdon Street in Philadelphia, Pennsylvania.

(26)     On or about July 4, 2020, co-conspirator Germaine Lewis sent a direct message on Instagram asking an individual if Lewis can prepare a PUA application for that individual.

(27)    On or about July 4, 2020, defendant BIHEIS MOORE exchanged multiple Instagram messages with an individual regarding defendant MOORE filing a PUA application for him. Defendant MOORE asked for the individual's Social Security Number.

(28)    On or about July 25, 2020, defendant BIHIES MOORE sent an Instagram message to a group, including co-conspirator Tahir Rivers, in which defendant MOORE told these individuals to let MOORE continue to do his criminal activities and that they should focus on expanding their criminal activities because the "lil pua money" will run out.

(29)    On or about August 14, 2020, defendant JAHLIL WILLIAMS posted a photo on Instagram of four freezer bags full of marijuana with the text "good pack."

(30)    On or about August 17, 2020, defendant JAHLIL WILLIAMS posted a video on Instagram offering bulk quantities of marijuana for sale.

(31)    On or about August 17, 2020, defendant JAHLIL WILLIAMS posted a video on Instagram offering the sale of marijuana for 1700 dollars a pound.

(32)    On or about September 11, 2020, defendants KYAIR GARNETT, BIHEIS MOORE, and RAKIEM KING, and others conspired to rob and assault L.F., resulting in the attempted robbery and shooting of L.F. that same day.

(33)    On or about September 11, 2020, defendants BIHEIS MOORE and RAKIEM KING fled from the scene of the L.F. shooting and transferred and disposed of the firearm used in the attempted robbery and shooting of L.F.

(34)    On or about March 2, 2021, defendant HARRY DRAPER received counterfeit United States currency from co-conspirator Ronald Bell, charged elsewhere, in Philadelphia, Pennsylvania

(35)     On or about March 2, 2021, defendant HARRY DRAPER sold counterfeit United States currency to a confidential informant in Philadelphia, Pennsylvania

(36)     On or about March 6, 2021, defendant HARRY DRAPER sent a text message to a confidential informant a with photo of counterfeit United States currency with the same serial numbers as counterfeit United States currency passed earlier that day by unknown individuals at a CVS in Philadelphia, Pennsylvania.

(37)     On or about April 21, 2021, defendant HARRY DRAPER received counterfeit United States currency from co-conspirator Ronald Bell in Philadelphia, Pennsylvania.

(38)     On or about April 21, 2021, defendant HARRY DRAPER sold counterfeit United States currency to a confidential informant in Philadelphia, Pennsylvania.

(39)     On or about June 11, 2021, defendant WARD ROBERTS possessed and passed counterfeit United States currency at the Giant Food Store, at 2180 West Chester Pike, in Marple Township, Pennsylvania.

(40)     On or about June 12, 2021, defendant WARD ROBERTS possessed and passed counterfeit United States currency at the Giant Food Store, at 10 East Ridge Pike, Conshohocken, Pennsylvania.

(41)     On or about June 12, 2021, defendant WARD ROBERTS possessed and passed counterfeit United States currency at the Giant Food Store, at 2450 Chemical Road, Plymouth Meeting, Pennsylvania.

(42)    On or about June 12, 2021, defendant WARD ROBERTS possessed and passed counterfeit United States currency at the Giant Food Store, at 310 South Henderson Road, King of Prussia, Pennsylvania.

(43)    On or about June 12, 2021, defendant WARD ROBERTS possessed and passed counterfeit United States currency at the Giant Food Store, at 2670 Egypt Road, Norristown, Pennsylvania.

(44)    On or about June 12, 2021, defendant WARD ROBERTS possessed and passed counterfeit United States currency at the Giant Food Store, at 1760 Dekalb Pike, Blue Bell, Pennsylvania.

(45)    On or about June 16, 2021, defendant WARD ROBERTS possessed and passed counterfeit United States currency at the Giant Food Store, at 698 Downingtown Pike, West Chester, Pennsylvania.

(46)    On or about June 16, 2021, defendant WARD ROBERTS possessed and passed counterfeit United States currency at the Walmart, at 270 Indian Run Street, Exton, Pennsylvania.

(47)    On or about July 3, 2021, defendants JAHLIL WILLIAMS and HANEEF ROBERSON jointly possessed a loaded firearm in Philadelphia, Pennsylvania.

(48)    On or about August 22, 2021, defendant HANEEF ROBERSON possessed and passed counterfeit United States currency at Ace Hardware, at 310 N. Lewis Road, Royersford, Pennsylvania.

(49)     On or about August 22, 2021, defendant HANEEF ROBERSON possessed and passed counterfeit United States currency at Giant Food Store, at 967 S. Township Line Road, Royersford, Pennsylvania.

(50)     On or about September 24, 2021, defendant HARRY DRAPER received counterfeit United States currency from co-conspirator Ronald Bell.

(51)     On or about September 24, 2021, defendant HARRY DRAPER sold counterfeit United States currency to a confidential informant.

(52)     On or about September 29, 2021, defendant JAHLIL WILLIAMS sought individuals to assist him in carrying out one or more murders for hire. Defendant HANEEF ROBERSON volunteered but was unable to carry out the murder. Defendant WILLLIAMS then tasked several Omerta associates to carry out the murder. To communicate regarding the murder, defendant WILLIAMS and the associates used Instagram to send electronic messages in interstate commerce. Defendant WILLIAMS and the associates also utilized motor vehicles to ambush the intended murder victim. However, the Omerta associates shot the wrong individuals, resulting in the murder of C.J. and the wounding of K.P. and S.D.

(53)     On or about October 26, 2021, defendant HARRY DRAPER sold and delivered counterfeit United States currency to a confidential informant.

(54)     On or about November 24, 2021, defendant HARRY DRAPER sold counterfeit United States currency to a confidential informant.

(55)     On or about November 29, 2021, in Philadelphia, defendants JAHLIL WILLIAMS, KYAIR GARNETT, and HANEEF ROBERSON, and others known to

the grand jury, shot and killed, and caused the murder of, S.J., at 131 West Wyoming Avenue, Philadelphia, Pennsylvania.

      (56)    From on or about November 29, 2021 to on or about December 2, 2021, defendant RAKIEM SAVAGE obstructed the law enforcement investigation into the murder of S.J. by assisting defendant JAHLIL WILLIAMS in remaining a fugitive and undiscovered by law enforcement.

      (57)    On or about December 2, 2021, defendants JAHLIL WILLIAMS and RAKIEM SAVAGE possessed with the intent to distribute Promethazine, a Schedule V controlled substance, at an Omerta safehouse in North Philadelphia.

      (58)    On or about December 2, 2021, defendants JAHLIL WILLIAMS and RAKIEM SAVAGE possessed multiple firearms and a bulletproof vest at an Omerta safehouse in North Philadelphia.

      (59)    On or about December 18, 2021, defendant HANEEF ROBERSON possessed and attempted to pass counterfeit United States currency at a Walmart in Cornelia, Georgia.

      (60)    On or about December 20, 2021, defendant HANEEF ROBERSON possessed and attempted to pass counterfeit United States currency at a Walmart in Oakwood, Georgia.

      (61)    On or about December 20, 2021, defendant HANEEF ROBERSON possessed and passed counterfeit United States currency at a Walmart in Gainesville, Georgia.

(62)     On or about December 20, 2021, defendant HANEEF ROBERSON possessed and attempted to pass counterfeit United States currency at a Walmart in Dawsonville, Georgia.

(63)     On or about December 20, 2021, defendant HANEEF ROBERSON possessed and passed counterfeit United States currency at a Walmart in Dahlonega, Georgia.

(64)     On or about December 20, 2021, defendant HANEEF ROBERSON possessed and passed counterfeit United States currency at a Walmart in Cleveland, Georgia.

(65)     On or about December 23, 2021, defendant HANEEF ROBERSON possessed and attempted to pass counterfeit United States currency at a Walmart in Gainesville, Georgia.

(66)     On or about December 23, 2021, defendant HANEEF ROBERSON possessed and attempted to pass counterfeit United States currency at a Walmart in Canton, Georgia.

(67)     On or about January 6, 2022, defendant HANEEF ROBERSON possessed and passed counterfeit United States currency at a Walmart in Monroe, Georgia.

(68)     On or about January 7, 2022, defendant HANEEF ROBERSON possessed and passed counterfeit United States currency at a Walmart in Jasper, Georgia.

(69)     On or about January 7, 2022, defendant HANEEF ROBERSON possessed and passed counterfeit United States currency at a Walmart in Canton, Georgia.

(70)    On or about January 9, 2022, defendant HANEEF ROBERSON possessed and passed counterfeit United States currency at a Walmart in Gainesville, Georgia.

(71)    On or about January 9, 2022, defendant HANEEF ROBERSON possessed and passed counterfeit United States currency at a Walmart in Oakwood, Georgia.

(72)    On or about January 14, 2022, co-conspirator Germaine Lewis possessed and passed counterfeit United States currency at the Target store, at 11000 Roosevelt Boulevard, Philadelphia, Pennsylvania.

(73)    On or about January 14, 2022, co-conspirator Germaine Lewis robbed the Target store, at 11000 Roosevelt Boulevard, Philadelphia, Pennsylvania.

(74)    On or about January 20, 2022, co-conspirators Germaine Lewis and Justice Harris possessed and passed counterfeit United States currency at a Giant Food Store, at 2201 Cottman Avenue, Philadelphia, Pennsylvania.

(75)    On or about January 20, 2022, co-conspirators Germaine Lewis and Justice Harris robbed a Giant Food Store, at 2201 Cottman Avenue, Philadelphia, Pennsylvania.

(76)    On or about January 24, 2022, co-conspirators Germaine Lewis and Justice Harris possessed and attempted to pass counterfeit United States currency at a Target store, at 7400 Bustleton Avenue and a ShopRite supermarket, at 11000 Roosevelt Boulevard, both in Philadelphia, Pennsylvania.

(77)    On or about March 28, 2022, co-conspirator Justice Harris possessed counterfeit United States currency in Philadelphia, Pennsylvania.

(78)    On or about April 4, 2022, defendant JAHLIL WILLIAMS exchanged messages on Instagram with defendant RAKIEM SAVAGE. Defendant WILLIAMS mentioned that an Instagram post named him as involved in the C.J. and S.J murders. Defendant SAVAGE stated that the juveniles defendant WILLIAMS hired to kill C.J. are now involved in further Omerta activities and have been difficult. Defendant WILLIAMS stated that he would be "getting the drop on them."

(79)    On or about April 22, 2022, co-conspirator Ronald Bell sold counterfeit United States currency to a confidential informant.

(80)    On or about May 9, 2022, co-conspirator Ronald Bell sold counterfeit United States currency to a confidential informant.

(81)    On or about May 20, 2022, co-conspirator Ronald Bell possessed $27,300 in counterfeit United States currency and counterfeiting paraphernalia, including paint brushes, holographic paint, parchment paper, and approximately 30 printer ink cartridges.

(82)    On or about July 19, 2022, co-conspirators Germaine Lewis and Justice Harris possessed and passed counterfeit United States currency at the Wawa convenience store, 33 S. 16th Street, Philadelphia, Pennsylvania.

(83)    On or about July 19, 2022, co-conspirators Germaine Lewis and Justice Harris robbed the Wawa convenience store, at 33 S. 16th Street, Philadelphia, Pennsylvania.

(84)    On or about July 22, 2022, co-conspirators Germaine Lewis and Justice Harris possessed and passed counterfeit United States currency at the Wawa convenience store, at 1190 Market Street, Philadelphia, Pennsylvania.

(85)    On or about July 22, 2022, co-conspirators Germaine Lewis and Justice Harris robbed the Wawa convenience store, at 1190 Market Street, Philadelphia, Pennsylvania.

(86)    On or about July 26, 2022, co-conspirators Germaine Lewis and Justice Harris possessed and passed counterfeit United States currency at the Sister Cities Café in Philadelphia, Pennsylvania.

(87)    On or about July 26, 2022, co-conspirators Germaine Lewis and Justice Harris robbed the Sister Cities Café, at 218 N. 18th Street, Philadelphia, Pennsylvania.

(88)    On or about August 11, 2022, co-conspirators Germaine Lewis and Justice Harris possessed and passed counterfeit United States currency in Philadelphia, Pennsylvania.

(89)    On or about August 26, 2022, co-conspirators Germaine Lewis, Justice Harris, and Tahir Rivers attempted to rob the Walmart store, at 4640 Roosevelt Boulevard, Philadelphia, Pennsylvania, by trying to pull a cash register out of the wall.

(90)    On or about August 27, 2022, co-conspirators Justice Harris and Tahir Rivers possessed and passed counterfeit United States currency at the Dollar Store, at 2201 West Cambria Street, Philadelphia, Pennsylvania.

(91)    On or about August 27, 2022, co-conspirators Justice Harris and Tahir Rivers robbed the Dollar Store, at 2201 West Cambria Street, Philadelphia, Pennsylvania.

(92)    On or about November 2, 2022, co-conspirator Nidean Parker-Williams, charged elsewhere, initiated a video call from jail to co-conspirator Jiheis Moore, who

is also charged elsewhere. Parker-Williams and Jieheis Moore discussed Omerta's violent activities. During this video call, Jiheis Moore displayed a firearm.

(93)    On or about November 20, 2022, defendant RAKIEM SAVAGE saved a photo on his phone of a betting slip from a Philadelphia casino.

(94)    On or about November 27, 2022, co-conspirator Nidean Parker-Williams, charged elsewhere, initiated a video call from jail to co-conspirator Jiheis Moore, who is also charged elsewhere. During this video call, Parker-Williams utilized the display name of defendant HANEEF ROBERSON. In addition, during this video call, Jiheis Moore showed Parker-Williams another firearm.

(95)    On or about December 11, 2022, defendant RAKIEM SAVAGE saved a photo on his phone of a betting slip from a Philadelphia casino.

(96)    On or about December 17, 2022, defendant RAKIEM SAVAGE saved a photo on his phone of a betting slip from a Philadelphia casino.

(97)    On or about December 18, 2022, defendant RAKIEM SAVAGE saved a photo on his phone of a betting slip from a Philadelphia casino.

(98)    On or about December 21, 2022, defendant RAKIEM SAVAGE saved a photo on his phone of a large quantity of marijuana with the words "Lemon Cake" on a piece of paper on top of the marijuana.

(99)    On or about December 21, 2022, defendant RAKIEM SAVAGE saved a photo on his phone of a large quantity of marijuana with the words "Baby Runtz" on a piece of paper on top of the marijuana.

(100)   On or about December 21, 2022, defendant RAKIEM SAVAGE saved a photo on his phone of a large quantity of marijuana with the words "Ice Cream" on a piece of paper on top of the marijuana.

(101)   On or about December 21, 2022, defendant RAKIEM SAVAGE saved a photo on his phone of a large quantity of marijuana with the words "Black Ice" on a piece of paper on top of the marijuana.

(102)   On or about December 21, 2022, defendant RAKIEM SAVAGE saved a photo on his phone of a betting slip from a Philadelphia casino.

(103)   On or about December 21, 2022, defendant RAKIEM SAVAGE saved a photo on his phone of a betting slip from an online sportsbook.

(104)   On or about December 23, 2022, defendant RAKIEM SAVAGE saved a photo on his phone of a betting slip from a Philadelphia casino.

(105)   On or about December 23, 2022, defendant RAKIEM SAVAGE saved a photo on his phone of a betting slip from a Philadelphia casino.

(106)   On or about December 24, 2022, defendant RAKIEM SAVAGE saved a photo on his phone of a betting slip from a Philadelphia casino.

(107)   On or about December 25, 2022, defendant RAKIEM SAVAGE saved a photo on his phone of a betting slip from a Philadelphia casino.

(108)   On or about January 8, 2023, defendant RAKIEM SAVAGE saved a photo on his phone of a betting slip from a Philadelphia casino.

(109)   On or about January 10, 2023, defendant RAKIEM SAVAGE saved a photo on his phone of bundled United States currency in a box on the seat of a car.

(110) On or about January 15, 2023, defendant RAKIEM SAVAGE saved a photo on his phone of a betting slip from a Philadelphia casino.

(111) On or about February 8, 2023, defendant RAKIEM SAVAGE saved a photo on his phone of a container holding multiple bottles of Promethazine, a Schedule V controlled substance.

(112) On or about February 10, 2023, defendant RAKIEM SAVAGE saved an image on his phone of a text conversation that detailed the delivery dates and prices for a shipment of Promethazine, a Schedule V controlled substance.

(113) On or about February 27, 2023, defendant RAKIEM SAVAGE saved a photo on his phone of a betting slip from a Philadelphia casino.

(114) On or about March 14, 2023, defendant RAKIEM SAVAGE saved a photo on his phone of seven firearms, including a rifle, a revolver, and five handguns.

(115) On or about April 5, 2023, defendant JAHLIL WILLIAMS sent a co-conspirator a text message asking the co-conspirator to contact a prison guard to smuggle items into the jail for defendant WILLIAMS.

(116) On or about April 7, 2023, defendant JAHLIL WILLIAMS sent text messages to RAKIEM SAVAGE attaching police reports related to the murder of S.J. These police reports were marked as "Defense Copy."

(117) On or about April 10, 2023, defendant RAKIEM SAVAGE saved a photo on his phone of a machinegun conversion device.

(118) On or about April 12, 2023, defendant RAKIEM SAVAGE saved a photo on his phone of an automatic money counter and quantities of United States currency.

(119)  On or April 17, 2023, defendants JAHLIL WILLIAMS and RAKIEM SAVAGE, via text messages, discussed the personnel at a state prison where WILLIAMS was being held. Defendant WILLIAMS stated that he had "1500" for a particular prison guard. Defendant SAVAGE stated that another prison guard was fired. WILLIAMS stated that a new guard was just assigned to his section but that WILLIAMS needed a particular connection to a specific guard to make the contraband situation work better.

(120)  On or about April 18, 2023, defendant RAKIEM SAVAGE sent text messages to defendant JAHLIL WILLIAMS attaching filed documents from the federal case involving co-conspirators Germaine Lewis, Justice Harris, and Tahir Rivers.

(121)  On or about April 18, 2023, defendant JAHLIL WILLIAMS sent a text message to defendant RAKIEM SAVAGE stating that WILLIAMS needed money to pay an individual for a potential murder for hire. Defendant WILLIAMS stated that would "pay em when it's done" and that it is "for Debo," or Jyquan Owens, a deceased Omerta member. Defendant SAVAGE responded to defendant WILLIAMS, stating it was already done.

(122)  On or about April 28, 2023, defendant RAKIEM SAVAGE saved of photo on his phone which depicted SAVAGE sitting at a Louis Vuitton store surrounded by multiple bags of purchases and counting out a large amount of cash.

(123)  On or about May 1, 2023, defendant JAHLIL WILLIAMS discussed with a co-conspirator the idea of smuggling marijuana into the jail for WILLIAMS to sell. The co-conspirator sent defendant WILLIAMS multiple photos of bulk marijuana and states that he is going to send it. Defendant WILLIAMS responded, reminding the co-conspirator to make sure to vacuum seal the marijuana.

31

(124)   On or about May 8, 2023, defendant JAHLIL WILLIAMS confirmed via text message with a co-conspirator that he received the marijuana and other contraband.

(125)   On or about May 8, 2023, defendant JAHLIL WILLIAMS received a text message from an unknown individual of a man walking. WILLIAMS responded, "we need him bad !!!"

(126)   On or about May 8, 2023, defendant JAHLIL WILLIAMS resent the video of the man walking to a co-conspirator.

(127)   On or about May 9, 2023, defendant JAHLIL WILLIAMS possessed a quantity of marijuana, suboxone, a cell phone, and cell phone accessories in his jail cell.

(128)   On or about May 9, 2023, On or about June 23, 2023, defendant RAKIEM SAVAGE saved photo on his phone of the order details and pricing as well as multiple bottles of Promethazine, a Schedule V controlled substance, on his phone.

(129)   On or about June 23, 2023, defendant RAKIEM SAVAGE saved a photo on his phone of an open bottle of Promethazine, a Schedule V controlled substance, and a large quantity of cash in a car.

(130)   From in or about May 2018 to in or about December 2023, defendants JAHLIL WILLIAMS, RAKIEM SAVAGE, and others ran illegal gambling businesses on street corners and other public areas in North Philadelphia and elsewhere.

## **Notice of Acts with Special Sentencing Factors**

On or about September 29, 2021, defendant JAHLIL WILLIAMS committed the knowing and intentional murder of C.J., a human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Section 2502(a).

On or about November 29, 2021, defendants JAHLIL WILLIAMS, KYAIR GARNETT, and HANEEF ROBERSON committed the knowing and intentional murder of S.J., a human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Section 2502(a).

All in violation of Title 18, United States Code, Section 1962(d).

## COUNT TWO

### CONSPIRACY TO COMMIT MURDER IN AID OF RACKETEERING
### 18 U.S.C. § 1959(a)(5)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     Omerta, as described more particularly in paragraphs 2 through 19 of Count One, which paragraphs are realleged here, constitutes an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact, which is engaged in, and the activities of which affect, interstate commerce. The enterprise constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

2.     Omerta, through its members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts and threats involving: murder, attempted murder, and robbery, all in violation of Pennsylvania law; and acts indictable under Title 18, United States Code, Section 1958 (relating to use of interstate commerce facilities in the commission of murder-for-hire); Title 18, United States Code, Section 1951 (relating to interference with commerce, robbery, or extortion); Title 18, United States Code, Sections 471, 472, and 473 (relating to counterfeiting); Title 18, United States Code, Sections 1341 and 1343 (relating to mail fraud and wire fraud); and offenses involving receiving, concealment, selling, and otherwise dealing in controlled substances, namely, conspiracy to distribute and to possess with intent to distribute a mixture and substance containing a detectable amount of marijuana, punishable under Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D), and 846.

34

3.      On or about November 29, 2021, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, for the purpose of maintaining and increasing position in an enterprise engaged in racketeering activity, defendants

**JAHLIL WILLIAMS,**
**KYAIR GARNETT,**
**HANEEF ROBERSON,**
**and**
**RAHMEIR HAYES**

conspired and agreed with each other and with others known to the grand jury to commit the knowing and intentional murder of S.J., a human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 903 and 2502(a).

All in violation of Title 18, United States Code, Section 1959(a)(5).

## COUNT THREE

### MURDER IN AID OF RACKETEERING
### 18 U.S.C. § 1959(a)(1)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     The allegations set forth in paragraphs 1-2 of Count Two are hereby incorporated by reference as if fully set forth herein.

2.     On or about November 29, 2021, at Philadelphia, in the Eastern District of Pennsylvania, for the purpose of maintaining and increasing position in an enterprise engaged in racketeering activity, defendants

**JAHLIL WILLIAMS,**
**KYAIR GARNETT,**
**HANEEF ROBERSON,**
**and**
**RAHMEIR HAYES**

knowingly and intentionally murdered, and willfully caused the murder of, and aided and abetted the murder of, S.J., a human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 2502(a) and 306.

In violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

## COUNT FOUR

### CONSPIRACY TO COMMIT MURDER IN AID OF RACKETEERING
### 18 U.S.C. § 1959(a)(5)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.    The allegations set forth in paragraphs 1-2 of Count Two are hereby incorporated by reference as if fully set forth herein.

2.    On or about September 29, 2021, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, for the purpose of maintaining and increasing position in an enterprise engaged in racketeering activity and for pecuniary gain, defendants

**JAHLIL WILLIAMS**
**and**
**HANEEF ROBERSON**

conspired and agreed with others known and unknown to the grand jury to commit the knowing and intentional murder of a human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 903 and 2502(a), resulting in the murder of C.J.

All in violation of Title 18, United States Code, Section 1959(a)(5).

## COUNT FIVE

**MURDER IN AID OF RACKETEERING**
**18 U.S.C. § 1959(a)(1)**

**THE GRAND JURY FURTHER CHARGES THAT:**

1.    The allegations set forth in paragraphs 1-2 of Count Two are hereby incorporated by reference as if fully set forth herein.

2.    On or about September 29, 2021, at Philadelphia, in the Eastern District of Pennsylvania, for the purpose of maintaining and increasing position in an enterprise engaged in racketeering activity and for pecuniary gain, defendant

### JAHLIL WILLIAMS

knowingly and intentionally murdered, willfully caused the murder of, and aided and abetted the murder of, C.J., a human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 2502(a) and 306.

In violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

## COUNT SIX

### ASSAULT WITH A DANGEROUS WEAPON IN AID OF RACKETEERING
### 18 U.S.C. § 1959(a)(3)

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.     The allegations set forth in paragraphs 1-2 of Count Two are hereby incorporated by reference as if fully set forth herein.

      2.     On or about September 29, 2021, at Philadelphia, in the Eastern District of Pennsylvania, for the purpose of maintaining and increasing position in an enterprise engaged in racketeering activity and for pecuniary gain, defendant

### JAHLIL WILLIAMS

knowingly and intentionally assaulted, and aided and abetted the assault of, K.P. with a dangerous weapon, that is, a firearm, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 2702(a)(4) and 306.

      In violation of Title 18, United States Code, Sections 1959(a)(3) and 2.

## COUNT SEVEN

### ASSAULT WITH A DANGEROUS WEAPON IN AID OF RACKETEERING
### 18 U.S.C. § 1959(a)(3)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.    The allegations set forth in paragraphs 1-2 of Count Two are hereby incorporated by reference as if fully set forth herein.

2.    On or about September 29, 2021, at Philadelphia, in the Eastern District of Pennsylvania, for the purpose of maintaining and increasing position in an enterprise engaged in racketeering activity and for pecuniary gain, defendant

### JAHLIL WILLIAMS

knowingly and intentionally assaulted, and aided and abetted the assault of, S.D. with a dangerous weapon, that is, a firearm, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 2702(a)(4) and 306.

In violation of Title 18, United States Code, Sections 1959(a)(3) and 2.

## COUNT EIGHT

## CONSPIRACY TO COMMIT COUNTERFEITING
## 18 U.S.C. § 371

**THE GRAND JURY FURTHER CHARGES THAT:**

1.          From at least in or about August 2018 to in or about February 2023, in the Eastern District of Pennsylvania and elsewhere, defendants

**JAHLIL WILLIAMS,**
**RAKIEM SAVAGE**
**KYAIR GARNETT,**
**HANEEF ROBERSON,**
**BIHEIS MOORE,**
**RAKIEM KING,**
**WARD ROBERTS,**
**and**
**HARRY DRAPER**

knowingly and willfully conspired and agreed, together and with others known and unknown to the grand jury, to commit offenses against the United States, namely, (a) falsely making counterfeit United States currency, in violation of Title 18, United States Code, Section 471, and (b) possessing, passing, and attempting to pass counterfeit United States currency in violation of Title 18, United States Code, Section 472.

## OVERT ACTS

2.          Overt Acts 1-5, 8-12, 14-15, 34-46, 48-51, 53-54, 59-72, 74, 76-77, 79-82, 84, 86, 88, and 90 of Count One are incorporated herein.

41

## COUNT NINE

### CONSPIRACY TO COMMIT MAIL AND WIRE FRAUD
### 18 U.S.C. § 1349

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times material to this indictment:

### INTRODUCTION

1.      On March 13, 2020, the President of the United States declared the ongoing COVID-19 pandemic to be an emergency under Section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act.

2.      On March 27, 2020, the Coronavirus Aid, Relief and Economic Security Act ("CARES Act") was signed into law. The CARES Act created the Pandemic Unemployment Assistance ("PUA") program, which provided unemployment benefits to individuals not eligible for regular unemployment compensation or extended unemployment benefits.

3.      The PUA program was administered by the various states, including the Commonwealth of Pennsylvania, but its benefits were funded by the federal government. In Pennsylvania, the Pennsylvania Department of Labor and Industry ("PA DLI") administered the PUA program, on behalf of the United States Department of Labor, which was responsible for overseeing the PUA program.

4.      PA DLI required that a PUA claim be made online via the PUA website, https://pua.benefits.uc.pa.gov. The applicant was required to enter personal identification information ("PII"), including name, date of birth, social security number, email address, telephone number, and a physical address. An applicant was also required to answer a series of questions that enabled the PA DLI to determine the applicant's eligibility and payment amount.

42

Once awarded PUA benefits, the applicant was required to submit weekly certifications showing continuing eligibility. While each state administered the application slightly differently, every state referenced in this indictment required that the application for PUA benefits as well as the weekly certifications be made online.

5.      While each state administered its own PUA program, the application used by each state was a standard online application form. The form consisted of 27 different sections including a range of questions within each section. Some of the questions asked for the applicant's PII and biographical information, while other questions dealt with the applicant's eligibility for the program and work history. An applicant was required to provide his or her current employment status and answer if he or she was able to accept a job if offered. If the applicant could not accept a job, the applicant was required to provide a reason for not being able to accept a job.

6.      The applicant was also asked whether they were unemployed as a result of a pandemic or major disaster. If the applicant's employment had not been affected as a result of a pandemic or major disaster, the applicant was not eligible for PUA benefits. If the applicant's employment had been affected by a pandemic or major disaster, the application was also required to note in which state the applicant was affected by the pandemic or major disaster and the nature of the pandemic or major disaster.

7.      In the "self-certification" section of the application, the applicant was required to answer questions regarding the nature and impact of a pandemic or major disaster on the applicant's employment status. First, the applicant was required to disclose the pandemic or major disaster which affected the applicant's employment. An applicant was only eligible to

43

receive weekly PUA benefits if the applicant was unemployed for reasons related to the COVID-19 pandemic. Second, the applicant was required to disclose the date of the applicant's last day of work. Finally, if the applicant quit their job due to COVID-19, the applicant was required to supply a reason for quitting.

8.      As to all of these preceding questions, the applicant was required to "acknowledge that I understand that making the certification is under penalty of perjury and intentional misrepresentation in self-certifying that I may fall in one or more of these categories is fraud."

9.      The applicant was also required to complete another certification, under penalty of perjury, that if offered a job, the applicant must be able to accept it. An applicant must read and understand the PUA Compensation Handbook, which indicated that any earnings must be reported for each week a person works. The applicant was also required to certify once again as to the application that "all information is true and complete" and that if the applicant provided false information, the applicant could be subject to criminal prosecution.

10.      If PA DLI or another state's administrative agency approved an application for PUA benefits, the applicant was then eligible to receive benefits in the form of checks, electronic fund transfers, or debit cards, and the checks and debit cards were mailed via the United States Postal Service to the physical address that appeared on the application. When a state agency approved an applicant's eligibility, the agency also established the applicant's period of benefits, amount of weekly benefit, and maximum total benefit amount. However, even after this occurred, the applicant did not receive the benefits unless the applicant performed the appropriate weekly certifications.

11.    The recipient of PUA benefits received a unique applicant number that corresponded to the applicant's initial application and weekly certifications. Payments for PUA were based on a seven-day period, from Sunday through Saturday. Thus, the benefits recipient was required to certify every seven days that he or she: (a) was ready, willing, and able to work each day; (b) was seeking full-time employment; (c) did not refuse any job offers or referrals; and (d) had reported any employment during the week and the gross pay or other payments received. The weekly certification was required to be completed in a timely manner. A delay in the weekly certification could result in a delay or denial of further payments.

12.    None of defendants JAHLIL WILLIAMS, RAKIEM SAVAGE, KYAIR GARNETT, HANEEF ROBERSON, BIHEIS MOORE, and RAKIEM KING had any type of employment when the pandemic began, none of them lost any employment due to COVID-19, and none of them sought employment during the pandemic. Further, none of them reported any income from counterfeiting to determine their COVID-19 eligibility.

### CONSPIRACY AND THE SCHEME TO DEFRAUD

13.    From at least in or about March 2020 to on or about September 6, 2021, in the Eastern District of Pennsylvania, and elsewhere, defendants

**JAHLIL WILLIAMS,
RAKIEM SAVAGE,
KYAIR GARNETT,
HANEEF ROBERSON,
BIHEIS MOORE,
RAKIEM KING,
and
WARD ROBERTS**

conspired and agreed, together and with others known and unknown to the grand jury, to commit offenses against the United States, that is:

(a) to devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and, for the purpose of executing the scheme and artifice and attempting to do so, take and receive mail matter, and knowingly cause to be delivered by mail according to the direction thereon, such mail matter, in violation of Title 18, United States Code, Section 1341, and

(b) to devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and, for the purpose of executing the scheme and artifice, transmit or cause to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, and sounds, in violation of Title 18, United States Code, Section 1343.

## MANNER AND MEANS

It was part of the conspiracy that:

14.    Omerta members, including defendants JAHLIL WILLIAMS and BIHEIS MOORE and co-conspirators Germaine Lewis and Justice Harris used Instagram to discuss filing fraudulent PUA applications and to solicit more people to provide information for PUA applications.

15.    Defendants JAHLIL WILLIAMS, RAKIEM SAVAGE, KYAIR GARNETT, HANEEF ROBERSON, BIHEIS MOORE, RAKIEM KING, and WARD ROBERTS along with co-conspirators Tahir Rivers, Justice Harris, and Germaine Lewis, and others known and unknown to the grand jury, filed online, and caused to be filed online, fraudulent PUA applications.

16.     As part of their applications, defendants JAHLIL WILLIAMS, RAKIEM SAVAGE, KYAIR GARNETT, HANEEF ROBERSON, BIHEIS MOORE, RAKIEM KING and WARD ROBERTS caused PUA benefits to be directly deposited into their bank accounts or caused bank debit cards to be mailed to an address they listed on the applications.

17.     After they received and accessed the bank debit cards, defendants JAHLIL WILLIAMS, RAKIEM SAVAGE, KYAIR GARNETT, HANEEF ROBERSON, BIHEIS MOORE, RAKIEM KING and WARD ROBERTS made expenditures with the debit cards, withdrew cash using the debit cards, or transferred money from the debit cards to other bank accounts.

## OVERT ACTS

1.     On or about May 20, 2020, defendant RAKIEM KING, under penalty of perjury, electronically filed a first fraudulent application for Pennsylvania PUA benefits. The first application falsely stated that defendant KING was unemployed due to the COVID-19 pandemic and was seeking employment.

2.     On or about May 22, 2020, defendant RAKIEM SAVAGE, under penalty of perjury, electronically filed a fraudulent application for Pennsylvania PUA benefits. The application falsely stated that SAVAGE was unemployed due to the COVID-19 pandemic and was seeking employment.

3.     On or about May 29, 2020, defendant KYAIR GARNETT, under penalty of perjury, electronically filed a fraudulent application for Pennsylvania PUA benefits. The application falsely stated that defendant GARNETT was unemployed due to the COVID-19 pandemic and was seeking employment.

4.    On or about June 12, 2020, defendant BIHEIS MOORE, under penalty of perjury, electronically filed a fraudulent application for Pennsylvania PUA benefits. The application falsely stated that defendant MOORE was unemployed due to the COVID-19 pandemic and was seeking employment.

5.    On or about June 20, 2020, defendant WARD ROBERTS, under penalty of perjury, electronically filed a fraudulent application for Pennsylvania PUA benefits. The application falsely stated that defendant ROBERTS was unemployed due to the COVID-19 pandemic and was seeking employment.

6.    On or about June 22, 2020, defendant HANEEF ROBERSON, under penalty of perjury, electronically filed a fraudulent application for Pennsylvania PUA benefits. The application falsely stated that defendant ROBERSON was unemployed due to the COVID-19 pandemic and was seeking employment.

7.    On or about June 22, 2020, defendant JAHLIL WILLIAMS, under penalty of perjury, electronically filed a fraudulent application for Pennsylvania PUA benefits. The application falsely stated that defendant WILLIAMS was unemployed due to the COVID-19 pandemic and was seeking employment.

8.    On or about January 24, 2021, defendant RAKIEM KING, under penalty of perjury, electronically filed a second fraudulent application for Pennsylvania PUA benefits. The second application falsely stated that defendant KING was unemployed due to the COVID-19 pandemic and was seeking employment.

All in violation of Title 18, United States Code, Section 1349.

A TRUE BILL:

███████████████████████████████

_V N R / POR_

**JACQUELINE C. ROMERO**
**UNITED STATES ATTORNEY**

49

*No.* _ _ _ _ _ _ _ _ _ _

**UNITED STATES DISTRICT COURT**
Eastern District of Pennsylvania
Criminal Division

THE UNITED STATES OF AMERICA
vs.
JAHLIL WILLIAMS a/k/a Bill, 25th Street Bill, Kill Bill
KYAIR GARNETT a/k/a Ky Jefe, Jefe
HANEEF ROBERSON a/k/a Haneef Robinson-Tucker, Neef, BlackNeef, BlackNeef25st
BIHEIS MOORE a/k/a Heis, Klay, klay_30st, heis.30st
RAKIEM KING a/k/a Cat, Hellcat, hellcat30st
WARD ROBERTS a/k/a Rob, YoungWard25
HARRY DRAPER a/k/a Coach, Unk
RAKIEM SAVAGE a/k/a Roc, Fat Roc, roc30st
RAHMEIR HAYES a/k/a Sparx

INDICTMENT
**Counts :**
18 U.S.C. § 1962(d) (conspiracy to participate in the affairs of a
racketeering enterprise - 1 count)
18 U.S.C. § 1959(a)(1) (murder in aid of racketeering - 2 counts)
18 U.S.C. § 1959(a)(3) (assault with a dangerous weapon in aid of racketeering  - 2 counts)
18 U.S.C. § 1959(a)(5) (conspiracy to commit murder in aid of racketeering
- 2 counts)
18 U.S.C. § 371 (conspiracy to commit counterfeiting - 1 count)
18 U.S.C. § 1349 (conspiracy to commit mail and wire fraud - 1 count)